Good morning. Good morning. And again, thank you for accommodating the traffic issues for me coming from the East Bank. Well, just put it behind you and go for it. It's behind me, that's right. Thank you very much. My name is Jeffrey Rotwein. I represent the appellant, Joseph Ortega, in this case. And I will begin. What I'd like to do is reserve eight minutes for rebuttal, if I could. I may go beyond the eight minutes. All right. Well, I'll let you know. Okay. I could usually go through 15 minutes. The clock counts down, so when it starts going up, it means you've gone into overtime. All right. Thank you. All right. I will address the summary judgment issue first off. Initially, I'd like to state that the appellees have failed to identify in their brief with the required specificity any of the evidence in the record to satisfy their initial burden of proof to show that there are no triable issues of material fact. As to the elements of qualified immunity and the HECBAR, and the Court's certainly aware of the rule of appellate practice, Procedure 28 and the local Rule 28-2.8. So, frankly, I think that based on the briefing ---- Well, did the district court decide it on the HECBAR? I didn't believe the district court did. Did what? I'm sorry. The district court didn't decide this on the HECBAR, right? Well, it's a little unclear from the order. But, you know, as the Court knows, it's a de novo review here by this Court. But the brief by the appellees who have the burden of proof given this de novo presentation have an obligation to specify in their brief, and all they did really was cite pages of their separate statement that has multiple references to the record. Anyway. Counsel, for me, the nub of the case is whether or not there's a dispute of fact about whether there was an interval between the time the car stopped moving and the time the shot was fired. Right. And you cite to ---- I don't mean to hijack your argument, but for me, that's what the case is about. And so you cite to some photographs and a diagram and a video and whatnot about what you think creates an issue of fact about that. Yes. But I don't see it, and I want to give you every opportunity to convince me otherwise. All right. Okay. Well, considering the evidence, Your Honor, is most favorable to the appellant here, it shows genuine issues of disputes for trial purposes. Okay. The central issues for qualified immunity and the HECBAR are whether the collision for which the appellant, Mr. Ortega, was convicted of assault of the officers in the SUV and the shooting were sufficiently separate and distinct in time and space, such that the use of lethal force was not justified and the liability can be imposed on ---- But even your client says it happened really fast. Well, he said it happened fast. Do you have any evidence that it happened in less than or that it took more than three or four seconds? Well, I'll tell you. If you look at the spatial physical circumstances of the scene, starting with the van in which Officer Rodenspiel was riding, a car length, he said he stopped about a car length behind the Mitsubishi. But someone can run a car length in one or two seconds. So what is the evidence that it took more than a few seconds? And if you don't have any evidence that it took more than a few seconds, then how is there a dispute of fact that shows that there is a tribal issue about whether there was a significant gap? All right. Well, Officer Rodenspiel said he saw and heard the Mitsubishi collide with the SUV as he was exiting the van, which was within three or five ---- either as he was exiting the van or within three or five feet of exiting the van, which was two or three seconds, he said, after exiting the van. He then said he walked to the back of the Mitsubishi, which was the remainder of the van. Then the car length gap between the front of the van and the back of the Mitsubishi. He was walking, sidestepping along the street next to the curb. He had his gun at his waist. It was low level, waist level. He had his finger on the trigger, and he started to pick it up, and that's where he tripped on the curb and the firing. So if he walked three to five feet from the exit door of the van, that's another 10 to 12 feet to the back of the Mitsubishi, according to his estimates. So he had to walk another 10 to 12 feet. Well, so what evidence is there that it was more than three to five seconds? Well, I think the inferences from the scene, you have the video, the DVD of the scene, the cars are positioned separate, there's a gap in between. Well, what would you say is the most it could have taken? Well, six to 12 seconds. I mean, if he's walking. Oh, isn't that, like, still pretty fast? I'm sorry? Isn't that still pretty fast? We're not talking about where people are there for minutes or anything like that. It's a short period of time, I agree. Do you have any case that says that even six to 12 seconds? I mean, as I calculated, I think it seems probably less than that. But even if it's 10 seconds, do you have any case that says 10 seconds is enough to be a significant gap that we are in a new phase? Well, I don't have any case specifically on 10 seconds. But, I mean, if you count on 10 seconds, I mean, if I did it right now, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10. Rodenspiel, Officer Rodenspiel, during that period of time must have seen that the collision ended. The vehicles were stationary. Well, can I stop you there? How does he know it's over? How does he know it's over? Somebody who they thought was going to be armed and really dangerous has rammed the front end of the car. How does he know he's not going to put it in reverse? Well, they don't. But it's speculation as to whether or not there was any further. But we don't engage in a whole lot of Monday morning quarterbacking, as you know. Right. So just, again, to be fair and give you an opportunity to respond to this, it was dark, right? Well, no, it was light. It was in the morning, 10, 12 in the morning. It was in the daytime? It was a.m. Oh, I have that wrong. Okay. So that's helpful to me. So he bashed the car forward. And I think you did two things in your briefing that are distracting to me. One is, in your briefing in here today, you're talking about Officer Rodenspiel walking. And it doesn't sound to me like he was walking. These guys were rushing, certainly, and perhaps running would be more what I would expect. No evidence of that, though. There's no evidence that he was rushing. He said he walked three to five feet from the van. It took two to three seconds. He then walked to the back of the Mitsubishi. And he tripped. But I agree with you, but I just can't imagine that the scene unfolds the way you're describing, that it's sort of a leisurely stroll up to where the shooting occurred. And so I find that distracting. But I also want to know what the answer to the question is about how we know it's over. Well, he didn't know that it was over. But he has to assess what he's looking at and determine whether or not there is a continuing threat to anyone at the scene, particularly the two officers in the SUV. At what point is there not a continuing threat? The client was still behind the wheel. He's behind the wheel. He's not doing anything. The passenger isn't doing anything. How long does he have to wait? Not wait. Walk up, you know, pull the gun up if he wants, but don't trigger it. The triggering of the gun was the mistake. Putting his finger on the trigger? Right. Is that what you mean? Yes. Yeah. Triggering. The San Mateo Police Department regulations say do not fire into a vehicle unless there's no danger, unless there's no safety issues as to other people. And so firing a gun. How do they know that? Is there any evidence that the car was so incapacitated by the initial collision that it couldn't have backed up? I didn't see. It could have. That's right. I mean, there are potential dangers. There's always potential dangers when somebody is on the ground, you know, from a potential arrest. But if they're not threatening or acting in a way that he was threatening, he just smashed his car into the police truck. So how do they know he's not about to smash backwards into the other police car? Could have, but there's no evidence that it wasn't reversed. There's no evidence it was moving forward. My client was stationary in the car. Mr. Ramirez was stationary in the car. Nobody was making any sounds out of it, no weapons, nothing. That's right. I think that's right. But to follow up on Judge Friedland's point, the problem I have with it is that we don't require that the officers be correct. They can be wrong and still be entitled to immunity as long as they're reasonable. Right. Why was this unreasonable? Well, what was unreasonable in his conduct is the following, was the following, that up to the collision, had he been standing behind the car when it was driving into the SUV, okay, you know, as a threat to their officers, and he used the weapon. But it stopped. The collision happened. He had sufficient time to see the scene, to reassess, to realize, hey, this is over. Ortega's not, or you didn't even know where Ortega was. The driver of the Mitsubishi was not doing anything, nor was the passenger. The cars weren't moving forward or back. The reverse lights weren't on. And, and, and this is critical, the San Mateo Police Department regulations say that you do not fire into a vehicle if it poses a safety issue to other people. And our expert, our firearms law enforcement expert, Toby Gleckler, said that when Officer Rodenstein was standing at the back of the vehicle to shoot Ortega would have endangered the two officers. Well, does the regulation say if you think someone's going to kill you, you can't fire into a vehicle? I don't think it says that. If you take them, sorry? If a reasonable officer would think that there was a danger to, a lethal danger to himself and to other bystanders, does it say they can't fire into a vehicle? Well, I don't think that's what it says. Well, that's what the regulation says. I mean, I quoted it. I mean, it's in the record. That's what it says. But there was no danger to Rodenspiel. He didn't say the vehicle, Mitsubishi, was backing up, or he heard it revving, or anything. There was no continued threat to anyone. Do you want to, you're down to, you're down to less than five minutes. Do you want to reserve? Okay. Yes, I'd like to reserve. Okay. All right. Well, if you want to reserve, then I should sit down. Thank you. All right. Thank you, Your Honor. Yes, please proceed. Jeff Vucinich for the CDSA material and for Mr. Officer Rodenspiel. Let me just address the points that the court raised with respect to the time sequence. First of all, with respect to the case law. The case law that was cited by the, it's been cited in this case, when there's, in terms of time, the cases where there is a difference in time is when somebody's been apprehended, and then they're in handcuffs, officer strikes them. That's that type of situation. Or when the situation ends, somebody gets out of a van and something different is taking place. That's not the situation here. And this was a high-risk stop. This was an Orteno gang member, convicted felon. Arms were thought to be in the house or possibly on his presence. So this was a very high-risk stop. There's no evidence that it was over with. There is absolutely no evidence that this whole situation was over with in the case. And for that reason. So we're looking at it from the perspective of a reasonable officer, correct? Absolutely. A reasonable officer, not 20-20 what did happen or what didn't happen. I think, though, Orteno argues that a reasonable officer would not have placed his finger on the trigger when Rodden Spiel did and would have tried to avoid handling his firearm in such a fashion that he might trip and the gun would accidentally discharge. What's your response to that? Our response to that is, as we set forth in our argument in the underlying case, that this was an assault with a deadly weapon. And he's seeing an assault with a deadly weapon take place in front of him. As a result of seeing an assault with a deadly weapon, he had to react. It's what a reasonable officer would do under those situations. Objectively, with assault with a deadly weapon, an officer has a right and an obligation to react, not only to protect himself but to protect the other officers involved. Well, I understood Appellant's counsel to say about this regulation that you can't shoot in a vehicle. If the vehicle is coming at you and you're going to get mowed down, can you shoot into a vehicle? That is not my understanding of the regulation. In the case law and the cases we've cited, for example, Brousseau, they involve shooting into or cases we've cited involve shooting into a vehicle. There's no regulation that says you cannot shoot into a vehicle. There just is no regulation like that that I'm aware of in this police department or any police department. Well, so what do we make of apparently Rodden Spiel didn't intend to shoot Ortega at that particular moment and he tripped and had his, you know, he had the trigger finger there. So what do we make of that? Well, the testimony is he was ---- I mean, let's say, let's assume that he could have. Okay. We're saying, okay, it was a reasonable officer could have thought that he was in, that deadly force was necessary and he could have shot him, but apparently he didn't intend to shoot him. He just was just tripped. His testimony was that he did intend to shoot him. And it was his intent because he recognized that there was a deadly situation moving forward and it was his intent to shoot him. Now, he did trip, but it was his intent to shoot him. And that's his testimony. Counsel, I'm distracted by this, the photos and the date time on them. And it may just be that the date stamp is incorrectly, but what is incorrect, but this says, you know, early morning. Early morning apparently doesn't mean early morning and it's still dark outside. Is that right? What time did this arrest happen? I thought it was at 10 o'clock. Okay. So these photographs that are in, I mean, it does change the scene if it happens early morning and it's dark versus early morning and it had already become light at the time of the ---- surely it was when the photos were taken. But you think as of the time of the arrest and the shooting, it was light. It was light. Okay. All right. Well, we just have a wrong date stamp. But that's helpful to me. I appreciate that. Is there some amount of time that could pass that would mean that there was a new phase here? I think based on the case law, there has to be a separate event that takes place. That's all the case law that I've read on this issue. A separate event? A separate event, for example. When I say a separate event, I'm looking at the Smith versus City of Hemet case, one of the cases we cited. The suspect was detained. There was no separation. And then an event takes place. So the suspect has been detained. Or another case, Smithart versus Towery. The suspect gets out of the vehicle. Well, it's not a separate event. That's an interval between the time where the risk has dissipated. Correct. Is that what you mean? Yes. If the risk had dissipated, then we're talking about a completely different situation because then we're evaluating use of force that is not directly in response to the risk of deadly force. Correct. Absolutely. What if the car hit the SUV so hard that it broke the engine, right? The whole car is smashed, so it couldn't have reversed. And half an hour passes. Are you saying because no new event happened, that after half an hour of nothing going wrong and the car is smashed, you could have shot him? Well, I'd have to be speculating on that because I can't imagine that the car would just be sitting there for half an hour with nothing happening. But counsel, it's a completely different argument if the officers weren't facing deadly force. Correct. So that's what Judge Friedland is getting at. You're not really contesting that a half an hour later it would be just fine to shoot somebody. No. There would be no deadly force at that point in time. So this is all happening, as I said, rapidly, evolving. It's a very relatively short period of time. And I believe all the – Given all inferences to the appellant, what is the longest period of time that the record shows that this could have taken? I believe it's three to four seconds. That's what I believe that the testimony is of everybody is it's a three to four second time range. Did he start – did the officer start to get out of the van before it had stopped moving? Yes. That wasn't a trick question. That's all I wanted to know. Thank you. That's how I read the record, that he had stopped – that he had already started to get out of the van. Which is why it makes it really difficult to be able to, I think, accurately measure just how long it would have taken. Because I don't have any way – unless I'm missing something here, I don't know how we could measure that interval between the time the car stopped, having crashed, and the time of the shot. My recollection is all the estimates are in the three to four second range. Those are the participants. And I think those are the key issues in the case. I think we've – You don't have to use all your time if you don't want to. I don't think we have other questions. But that's up to you. I don't have anything further to add. I hope I've answered all your key questions. Thank you. Counsel, I'm going to give you a head start. As you're walking to the podium, I'll ask my question. Which is, is it correct, my reading of the record, is that your client didn't know he'd been shot until he got out of the car. Is that right? How did he get out of the car? No. Sorry. My question is, again, I'm trying to get to this interval of when the shot took place. And my understanding is he, Mr. Ortega, didn't realize he'd been shot until he started to get out of the car. Is that right? Not clear. Not clear. He was shot in the back and it went into his heart. And he's sitting in the driver's seat. But didn't he make the statement that he didn't realize he'd been shot until he got out of the car? Well, yes, that's correct. But he felt something. He felt being hit in the back. And he was out of breath. And he was, something was wrong with him. And then he was, you know, the scene was frozen. And paramedics appeared and police officers took him out. I see. All right. Thank you. The three to four second interval, there's no evidence of that. And, again, I would say that the appellees have the burden to show that the period of time between the collision and the shooting was so. Did anyone say three to four seconds? I'm sorry? Did anyone say three to four seconds? No. No. Did anyone say more? Nobody said more. But if you look at what Officer Rodenspiel said, it took him two to three seconds to walk three to five feet. It's another 10 to 12 feet to the back of the Mitsubishi. If you do the calculations, it comes out to six to 12 seconds later. Okay. But I guess when you say there's no evidence of things, that's kind of hyperbole. There is evidence. Maybe it's not, you know, you have that. There is that testimony. Right. So there is some evidence. Well, there's evidence of a short period, granted. I mean, it wasn't a long period of time that the car was sitting there and he walked up to the back and raised his weapon. But it was, look, even two seconds, even if it's three to four seconds, one, two, three, you look at the scene, the cars are stopped, Ortega's not doing anything, Ramirez isn't doing anything, no weapons, no yelling, no resisting, no trying to evade the police. The cars aren't moving. They just had tried to evade the police. That's why the car lunged forward, right? Well, yeah. I mean, it lunged forward. That's not compliance. The police were yelling police and your car. Right. Okay. Yeah. But it stopped. But the crime stopped. If somebody is assaulted on the street and they stop and then the police walk up, they can't, well, the assault may be ongoing. You know, there's a case actually right on Coronado. That's why it's all about the interval. That's why at the beginning of the argument this is all about the interval. Right. I agree. I agree. It's all about the interval. But, again. What's your very best case law that supports your position? Well, beats, Hooper. Well, that's case law that supports the proposition, which I think is uncontroversial, that when there is an interval, a sufficient interval, and the risk is dissipated, then you're in a different ballgame. Right. But factually, I keep coming back to how do we know there was an interval here? Okay. First off, again, I mean, I didn't mean to be — Other than what you've already told us. Well, the appellees have the burden to show that it was so short that it was essentially during or immediately after their — Right. — the assault. They have the burden to prove that. You have to look at the — as you know, you have to look at the evidence. You're the plaintiff. Why don't you have the obligation to prove that something unreasonable happened here or something unconstitutional happened here? Because it's summary judgment. And you have to look at the evidence most favorable to my client. Right. But if you have no evidence that anything — Well, no. No, I do, Judge. If you look at the sequence of events, how it all unfolded from the van driving up to behind the Mitsubishi, and what Rodenspiel was doing, and you look at his testimony, and you look at his testimony in the motion to suppress in the criminal case, I should say. Right. And he talks about — he gets out of the — as he's getting out of the van, or within a couple seconds, he hears the revving of the Mitsubishi, and he sees the crash. Okay. It's over. It's over. Then he does other things. Well, say we think that for at least 20 seconds there's no way to know that it's over. Then do you have any evidence? For 20 — Say we think for 20 seconds there's a buffer around police action, and they can reasonably be confused or reasonably think something else might still happen. Do you have any evidence at that point that would prove your case? I mean, you are the plaintiff. So say we think the rule of law should be that for at least 20 seconds there's — the police could shoot if they think a deadly force just happened. Then what would be your evidence to show we still need a trial? Okay. Again, that's a trial issue. What is a trial issue? The trial issue is it was the gap, the interval, the time interval, so short that it was essentially during the assault or immediately after the assault. If you say we think 20 seconds should be the buffer around police action in this type of situation, would you need a trial to show that it might have been more than 20 seconds? Do you have any evidence that it might be more than 20 seconds, say? I don't have any evidence that it was more than 20. Or even really 10, right? Right. I mean, I think the inferences are Rodenspiel, Officer Rodenspiel, moved pretty quickly to the back of the Mitsubishi. He had his finger on the trigger, which was wrong, wrong, wrong, because the regulations do say it. It's in the record. But was it unreasonable? Is it reasonable? Well, but why should it? He can make a mistake. He's a police officer in a really high-stress, rapidly-evolving situation. He's allowed to make a mistake under our case law. Sure. Sure, he can make a mistake if it's objective. You get to put your finger on the trigger when you're ready to pull it. You put your finger on the trigger when you're ready to pull it and fire. There's no need to shoot Ortega. There was none. He wasn't doing anything. Ramirez wasn't. I'm repeating myself. Well, I guess I watch all those, you know, we all watch TV and we see chases and we see people ramming and they still keep driving on, and then there's an exchange of gunfire after that, and, you know, belonging to the Norteños is not the same as belonging to the Junior League. These are all potential. Well, but it's what would a reasonable officer think? Well, you know, the De Orle 272, I can't pronounce it, 272 Fed at 1381 says, a desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury. All right. Well, we've allowed you two additional minutes, so I think that we have your argument well in mind. Thank you. Okay. Thank you very much. This matter will stand submitted.
judges: Callahan, Christen, Friedland